# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CR-17-246-D |
| | ) | |
| NNAMDI FRANKLIN OJIMBA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are Defendant's motions in limine: (1) to Exclude the Testimony of Hill Feinberg and Pamela Bale [Doc. No. 70]; and (2) to Admit Evidence of Acquittals [Doc. No. 71]. The government has responded. The matter is fully briefed and at issue.

## BACKGROUND

This matter stems from a prior criminal case in which the government alleged Ken Ezeah and Akunna Ejiofor created a scheme to commit identity theft and wire fraud. In sum, the defendants were alleged to have set up various online dating profiles using false information, formed online relationships with several women, and then persuaded those women to wire money by promising to manage their money and investments. Ezeah subsequently pleaded guilty to conspiracy to commit wire fraud. Ejiofor opted to go to trial, where a jury found her guilty on all counts.

Here, Defendant was similarly indicted and tried for conspiracy to commit wire fraud (Count 1), aggravated identity theft (Count 2), and wire fraud (Counts 3-4) in October 2018. On October 11, 2018, the jury acquitted Mr. Ojimba on Counts 2-4 and a mistrial

was declared as to Count 1. The government filed an Advisement to the Court [Doc. No. 67] on November 16, 2018, of its intent to retry Mr. Ojimba on Count 1, conspiracy to commit wire fraud.

Addressed in this Order are two motions in limine filed by Defendant. First, Defendant moves to preclude the government from calling Pamela Bale and Hill Feinberg as witnesses based on his acquittals. Second, Defendant seeks to admit evidence of his prior acquittals in this case.

**STANDARD**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41, n. 16, 105 S. Ct. 460, 463, 83 L. Ed. 2d 443 (1984) (citing Fed. R. Evid. 103(c); cf. Fed. R. C. P. 12(e)). As such, "[t]he purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 Fed.Appx. 337 (10th Cir. 2010) (internal quotations omitted).

Despite these streamlining benefits, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007). In order to exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high

standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). However, "the district court may change its ruling at any time for whatever reason it deems appropriate." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (citations omitted); *see also Luce*, 469 U.S. at 41 ("The ruling is subject to change when the case unfolds … [E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## DISCUSSION

I. **Testimony of Hill Feinberg and Pamela Bale**

Defendant moves to preclude the government from calling Pamela Bale and Hill Feinberg as witnesses based on the proposition that his acquittal on the wire fraud charges collaterally estops the government from presenting evidence related to wire fraud.[1] Defendant argues that because he was acquitted on the wire fraud charges relating to Feinberg and Hill, they should not be permitted to testify in support of the conspiracy to commit wire fraud. Defendant also contends that the testimony would be irrelevant or prejudicial.

---

[1] The Government represents that it does not intend to call Hill Feinberg as a witness in Defendant's re-trial. [Doc. No. 75] at 1, n.1. Therefore, Defendant's motion in limine as to Hill Feinberg is denied as moot and this Order will address only the testimony of Pamela Bale.

3

## A. The Doctrine of Collateral Estoppel

The Supreme Court held in *Ashe v. Swenson*, 397 U.S. 436, 44, 90 S. Ct. 1194, 25 L. Ed. 2d 469 (1970), that the doctrine of collateral estoppel, an "establish[ed] rule of federal law[,] is embodied in the Fifth Amendment guarantee against double jeopardy." *See also, Dowling v. United States*, 493 U.S. 342, 347, 110 S. Ct. 668, 671, 107 L. Ed. 2d 708 (1990). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443.

However, the collateral estoppel component of the Double Jeopardy Clause does not "exclude in all circumstances, . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Dowling*, 493 U.S. at 348. Where a previous judgment of acquittal was based upon a general verdict the court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (internal quotations omitted). The defendant bears the burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling*, 493 U.S. at 350.

The Tenth Circuit requires the examination of two questions before the doctrine of collateral estoppel can be applied. "First, is the issue the defendants wish to foreclose from trial the actual basis for their prior acquittal? Second, is the same issue necessary to the

4

prosecution's case in this proceeding? If both questions yield affirmative answers, collateral estoppel bars retrial of the issue." *United States v. Wittig*, 575 F.3d 1085, 1098 (10th Cir. 2009) (internal citations omitted). The second question will only be satisfied "if the fact must be proved beyond a reasonable doubt in the new trial; if the issue is subject to a lower standard of proof, the government is not precluded from relitigating it." *Wittig*, 575 F.3d at 1098, n.1.

The *Dowling* Court had before it the question of testimony related to identity of the defendant in a related crime for which he had been previously acquitted. *Dowling*, 493 U.S. at 351. The Court ultimately determined that the testimony was admissible because "there [were] any number of possible explanations for the jury's acquittal verdict at [the] first trial" as there "was nothing at all that persuasively indicate[d] that the question of identity was at issue and was determined in the [defendant's] favor at the prior trial." *Id.*. at 352.

Defendant asserts two alternative theories upon which the jury reached its verdict in his previous trial: (1) he was not involved in the acts of identity theft and wire fraud; or, (2) he was not a member of the conspiracy at the time of the charged offenses in Counts 2-4. The Government offers a third alternative, that the jury was exhibiting "a natural reluctance to find a defendant guilty for a substantive offense absent proof that he personally committed it" rather than determining actual innocence as posited by Defendant. The fact that the parties submit multiple theories as to how the jury reached its decision is indicative of the problematic nature of general verdicts and parsing out the issue or question

of fact upon which the acquittal was based.[2] As in *Dowling*, there is nothing persuasive in the record to indicate the jury determined their verdict on the theories submitted by Defendant or the Government. Therefore, the first part of the *Wittig* test cannot be definitively answered. The Court cannot divine the issue of fact at the heart of the jury's verdict and whether Ms. Bale's testimony speaks to that issue.

The second *Wittig* inquiry likewise reveals the inapplicability of the doctrine of collateral estoppel in this case. Defendant's acquittal of each of the substantive crimes of identity theft and wire fraud do not necessarily preclude charges of conspiracy to commit those crimes. The Government need not prove beyond a reasonable doubt that Defendant committed identity theft or wire fraud with respect to Ms. Bale in order to prove beyond a reasonable doubt that he is guilty of a ***conspiracy*** to commit wire fraud which victimized Ms. Bale. Therefore, collateral estoppel does not require the exclusion of the testimony in question.

## B. Relevance and Prejudice

Defendant asserts any testimony by Ms. Bale would be irrelevant pursuant to Fed. R. Evid. 401 or, if relevant, it would be unduly prejudicial pursuant to Fed. R. Evid. 403. The government urges that Ms. Bale's testimony "was much broader than simply establishing the fact that the wire transfers occurred," in that it "showed the operation of the conspiracy, demonstrated its ultimate goals, and established a great many instances of wire communication in furtherance of the scheme." [Doc. No. 75] at 6. The Court is

---

[2] The Court does not accept these as inclusive of all possible theories.

familiar with the content of Ms. Bale's testimony having presided over Defendant's first trial and is inclined to agree with the government.

A "conspiracy count [] describes a much wider ranging fraudulent scheme" than the underlying substantive crime. *Wittig*, 575 F.3d at 1099. Defendant's indictment describes an elaborate scheme involving multiple victims. Ms. Bale is just one victim of the alleged conspiracy, and whether or not Defendant committed the specific wire fraud to which she fell victim, it remains a question whether he was a member of the overarching conspiracy. Ms. Bale's testimony described the object, manner, and means of the conspiracy as set forth in the Indictment of Defendant [Doc. No. 1]. Based on the Indictment, Ms. Bale's testimony has a "tendency to make a fact more or less probable than it would be without the evidence" and such fact "is of consequence in determining the action." Fed. R. Evid. 401. Therefore, Ms. Bale's testimony is admissible. Fed. R. Evid. 402.

Nor does the Court find that Ms. Bale's testimony would cause unfair prejudice, confuse the issues or mislead the jury. *See* Fed. R. Evid. 403. The probative value of the government's proposed testimony is not substantially outweighed by the danger of unfair prejudice. The government's proposed evidence is highly probative of the object, manner, and means of the alleged conspiracy to commit wire fraud. Defendant has not carried his burden of showing that the probative value of the testimony is substantially outweighed by a danger of unfair prejudice or any of the other enumerated grounds in Rule 403.

Finally, Defendant characterizes Ms. Bale's testimony as "other crimes evidence" and objects to it based on Fed. R. Evid. 404(b). However, the government is not offering Ms. Bale's testimony as evidence of Defendant's "other crimes" as specified in Rule

404(b). Instead, they offer Ms. Bale's testimony as evidence going to the elements of the broad conspiracy with which Defendant is charged. Such testimony is admissible.

Defendant's motion on this issue is denied.

## II. Admissibility of the Acquittals

Defendant argues that the acquittals are admissible: (1) under the doctrine of "curative admissibility"; (2) pursuant to Fed. R. Evid. 803(6) as a record of regularly conducted activity; (3) pursuant to Fed. R. Evid. 803(8) as a public record; (4) to demonstrate the existence of reasonable doubt; and, (5) pursuant to Fed. R. Evid. 807 as residual hearsay. Defendant further argues that the acquittals would not be prejudicial to the government under Fed. R. Evid. 403. The government responds that the acquittals: (1) are hearsay; (2) that Fed. R. Evid. 803(6) cannot be used to circumvent a more specific rule prohibiting admission; (3) Rule 807 does not apply because the acquittals are not probative of any fact at issue; and, (4) the doctrine of curative admissibility is a remedy rather than a stand-alone basis for the admission of otherwise inadmissible evidence.

### A. Admissibility as Fed. R. Evid. 803 Hearsay Exceptions

"[A] judgment of acquittal is hearsay, and there is no exception to the hearsay rule for judgments of acquittal." *United States v. Sutton*, 732 F.2d 1483, 1493 (10th Cir. 1984) (citing *United States v. Viserto,* 596 F.2d 531at 537 (2d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979)); *see also*, *United States v. Brown*, 730 Fed. Appx. 638, 651 (10th Cir. 2018) ("A judgment of acquittal is hearsay and doesn't meet one of the hearsay exceptions.") (citing *Sutton*, 732 F.2d at 1493). "The Federal Rules of Evidence except from the operation of the hearsay rule only judgments of conviction, Rule 803(22),

not judgments of acquittal." *Sutton*, 732 F.2d at 1492 (quoting *Viserto,* 596 F.2d at 537). Nor is a judgment of acquittal "usually admissible to rebut inferences that may be drawn from the evidence that was admitted." *United States v. Sutton*, 732 F.2d 1483, 1492 (10th Cir. 1984) (citing *United States v. Viserto,* 596 F.2d at 537).

The Tenth Circuit's ruling that acquittals do not fall under any of the hearsay exceptions is unequivocal. Defendant's motion to admit evidence of his acquittals pursuant to Fed. R. Evid. 803(6) and 803(8) must be denied.[3] A contrary finding would render the hearsay exception for convictions under Rule 803(22) superfluous. *United States v. Nguyen*, 465 F.3d 1128, 1132 (9th Cir. 2016).

**B. Admissibility Under the Residual Hearsay Rule.**

Fed. R. Evid. 807(a) provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804" if the statement satisfies four requirements. However, the Tenth Circuit "has observed that 'an expansive interpretation of the [Rule 807(a)] residual exception would threaten to swallow the entirety of the hearsay rule,' and should be used only 'in extraordinary circumstances.'" *Brown*, 730 Fed. Appx. at 651 (quoting *United States v. Lawrence*, 405 F.3d 888, 902 (10th Cir. 2005) (internal quotations omitted)).

In *Brown*, 730 Fed.Appx. at 651, the Tenth Circuit addressed the admissibility of acquittals as to substantive charges in a subsequent trial for conspiracy. Because the acquittal on a substantive charge "only proves that a jury found reasonable doubt as to the

---

[3] Because the Court finds the acquittals to be inadmissible, it need not discuss whether they should be excluded as prejudicial to the government pursuant to Rule 403.

9

conduct charged, [the] acquittal fails the third prong of Rule 807(a)" requiring the hearsay statement be "more probative on the point for which it is offered than any other evidence." *Id*. at 651. The Tenth Circuit found that a determination of admissibility under such circumstances "would justify admitting all acquittals" and "would allow Rule 807's residual exception to swallow the general rule that judgments of acquittal are inadmissible hearsay." *Id*. at 652 (citing *Lawrence*, 405 F.3d at 902).

Defendant's motion to admit evidence of acquittal pursuant to Fed. R. Evid. 807(a) is denied.

### C. Curative Admissibility

The doctrine of curative admissibility allows for the admission of evidence which is otherwise inadmissible. However, the use of this doctrine "is limited to the prevention of prejudice and used only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *United States v. Rucker*, 188 Fed. Appx. 772, 778 (10th Cir. 2006) (citing *United States v. Morales-Quinones*, 812 F.2d 604, 609-10 (10th Cir.1987)). "Curative admissibility applies only when other evidence has been improperly admitted." *Brown*, 730 Fed. Appx. 638, 652 n.3 (10th Cir. 2018); *Rucker*, 188 Fed. Appx. at 778-779 (citing *Untied States v. Regents of N.M. Sch. of Mines*, 185 F.2d 389, 391 (10th Cir. 950)). Therefore, "curative admissibility" is a remedy rather than a stand-alone basis for admissibility.

Defendant asserts that evidence of his acquittals should be admitted under the doctrine of curative admissibility if the testimony of Ms. Bale is offered at his re-trial on the conspiracy charge. Motion to Admit at 1. As discussed above, Ms. Bale's testimony

is admissible as to the conspiracy charge and, in general terms, is not unduly prejudicial. Therefore, Defendant has failed to establish the necessary prerequisite of improperly admitted evidence or unfair prejudice to invoke application of the curative admissibility doctrine.

Defendant's motion to admit evidence of his prior acquittals on the basis of "curative admissibility" in response to the testimony of Ms. Bale is denied.

## CONCLUSION

Defendant's Motion in Limine re: Testimony of Hill Feinberg and Pamela Bale [Doc. No. 70] and Motion to Admit Evidence of Acquittals [Soc. No. 71] are **DENIED** as set forth herein.

**IT IS SO ORDERED** this 23rd day of April 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE